IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| RAYA NSHEIWAT,<br><br>Plaintiff,<br><br>vs.<br><br>WALMART, INC.,<br><br>Defendant. | NO. 3:20-cv-00064-RP-HCA<br><br><br>**PLAINTIFF RAYA NSHEIWAT'S MEMORANDUM IN SUPPORT OF THIRD PARTY'S MOTION TO RECONSIDER** |

Plaintiff, RAYA NSHEIWAT, submits the following Memorandum in support of the Electronic Manufacturing Services, LLC ("EMS") and Bill Barker's Motions to Reconsider:

### I. **INTRODUCTION**

On May 10, 2023, Defendant's counsel sent a letter asking the Court to set a status date because the "parties have been unable to resolve various disputes over depositions..." [Dkt. #102, p.1]. The Court scheduled a status conference for May 16, 2023 and ordered Plaintiff's counsel to provide documentation regarding Plaintiff's medical condition. [Dkt. #103]. Neither Defendant's counsel's letter nor the Court's order mentioned a pending motion to quash a subpoena Defendant had issued to ADP or an objection that counsel asserted to a subpoena issued to accountant Bill Barker.

When Defendant's counsel requested the status hearing he was aware that Gary Hollander, Plaintiff's lead counsel, would be unable to attend the status because he was scheduled to commence a trademark infringement trial in the District Court for the Northern District of Illinois on May 15, 2023, and a trial on a commercial claim in the District Court for the District of Colorado commencing on May 22, 2023. Both trials proceeded as scheduled.



At the May 16, 2023 status hearing, the Court raised the issues of the subpoenas issued to ADP and Mr. Barker. (May 16, 2023 transcript attached as Exhibit A, pp. 28-29). The Court believed there were issues "related to that about the number of individuals that she – that were employed by that company, what she was doing for that company in terms of training those individuals, and how long those individuals were employed and what they were doing." 9*Id.* p.280. The Court asked several questions regarding Defendant's need for the information it seeks in the subpoenas in light of the documents that already had been produced to Defendant. (*Id*). Defendant's counsel proceeded to assert a series of misrepresentations to justify the need for further economic discovery related to subpoenas it issued to ADP and accountant Mr. Barker. As explained below, the numerous misrepresentations made by Defendant's counsel misled the Court into doubting the legitimacy of Plaintiff's business or income – and apparently the legitimacy of her claim.

As Defendant's counsel has acknowledged, this is a simple personal injury case. [Dkt. #98 p.1]. The number of employees of Plaintiff's business (even though this information has already been provided), who trained the employees and the length of employment of the various employees are not at issue in this case. Plaintiff files this Memorandum because she has been prejudiced by the lack of notice, the unavailability of her lead attorney and the manner in which the Court was misled at and leading up to the May 16, 2023 hearing.

## II. <u>PREVIOUSLY PRODUCED RECORDS ESTABLISH PLAINTIFF'S INCOME</u>

Plaintiff has produced her personal income tax returns as requested by Defendant. The personal tax returns include the tax information of EMS in Schedule C which sets forth the EMS revenues, expenses and profit. EMS also filed quarterly 941 returns, which show that EMS had "real" employees and paid actual taxes on the wages earned by those employees. As a reference

2

Plaintiff attaches as Exhibit B hereto EMS's's 941 for the second Quarter of 2015. This document shows that the following: EMS had 36 employees; paid gross wages of $191,034.94 for the quarter; federal income taxes withheld were $13,351.40; Social Security taxes paid were $23,689.44; Medicare taxes paid were $5540.28; and total taxes paid were $42,581.24. The additional records produced include invoices issued for services provided by EMS, proof of payment for such services and the agreement pursuant to which the payments were made. Additionally, Shalabh and Vikram Kumar, the persons Defendant alleges engaged in illegal conduct, including serious federal offenses, gave depositions and answered all questions regarding Plaintiff's business and their relation to that business. Plaintiff suggests that if the Court will make an *in camera* review of the documents produced by Plaintiff and the depositions of the Kumars it will see that there are no actual issues regarding the legitimacy of Plaintiff's lost income damage claim.[1]

### III. DEFENDANT'S MISREPRESENTATIONS REGARDING PLAINTIFF AND HER BUSINESS

Defendant through its counsel made numerous false and malicious misrepresentations regarding Plaintiff and her business at and leading up to the May 16, 2023 hearing. Defendant's counsel made the following allegations (emphasis added to highlight the particularly egregious misrepresentations) regarding Plaintiff's business at the May 16, 2023 hearing:

- "[T]he plaintiff operates some sort of labor brokerage service where she acquires and trains employees which are kept under the mantle of her business but then she has them perform work for another business." (Exhibit A p.28).

- "So we need to understand exactly what she does and how much she charges and **why it is that she's lost $20 million doing this...**" (*Id.* p.29).

---

[1] Plaintiff dos not attach these records because they contain confidential, propriety information.

3

- "[I]t looks like what's happening here is there's Mr. Kumar or whoever is running the main business appears to have set up a separate business to create distance for purposes of – for **tax purposes or for employment of people who are from outside the United States.**" (*Id.* p.29).

- "So every time we try to get to the real issues which is okay, we see you've created these two – this – what we view is kind of a **shell company to absorb this liability and perhaps transfer this asset**, but you haven't given us anything of substance." (*Id.* p.31).

- "And we would very much like to find out and talk to the foremen or the people in this company, **confirm that they're real employees, confirm that they have W-2's and tax documents that indicate they're legally allowed to work in this particular area...**" (*Id.* p.32).

- "[T]here's no such thing as a village dialect." (*Id.* p.33).

- "We've gotten a lot of documents that tell me that the Kumars have very good lawyers and very good accountants to structure their affairs and at least **transfer what we think is a significant liability onto this shell company that if the government had to come in and say why aren't their taxes paid? What about the immigration status?**" (*Id.*).

- "[T]here is **self-dealing** and close-dealing all over the place." (*Id.* p.34).

- "But yeah, there's **a bunch of shell companies** that are set up in there. And I forget off the top of my head what the plaintiff's company is. **AVG, I think, is the plaintiff's company.**" (*Id.* p.35).

4

- "The only objection I understand that was filed **was from plaintiff's firm.**"[2] (*Id.*).

In the lead up to the May 16, 2023 hearing, Defendant through its counsel made several other blatantly false statements:

- "Plaintiff's expert also relied upon a statement from **Plaintiff's business partner,** Vikram Kumar, owner of AVG..." [Dkt. #86 p.2].

- "The **evidence produced** so far suggests that Plaintiff played a passive role; and simply was the **nominal head of a shell company to shield AVG from potential liabilities, including tax, immigration, employment, and workplace practices violations.**" [*Id.* p.3].

- "AVG (and **EMS**) are ultimately **owned by the Kumar Family Trust** of which **Vikram and Shalabh Kumar are owners and beneficiaries.**" [*Id.* p.3].

- "From what has been produced, EMS appears to be a **shell company**, designed to...**transfer tax and immigration liabilities to EMS** which Plaintiff nominally ran **despite being incompetent and unable to understand English.**" [Dkt. #98 p.2].

- "None of the documents produced identify...even her **day-to-day activities that would justify any salary or executive position.**" [*Dkt. #98 p.2*].

## IV. AUTOTECH AND THE KUMARS

Autotech Technologies, LP, ("Autotech") the company that entered into the agreement with EMS, is a highly successful business that has operated for over 40 years.[3] Shalabh

---

[2]The Court called out Defendant's counsel on this misrepresentation, which is the only one that the Court had firsthand knowledge was false. Defendant's counsel responded, "I did misspeak," seeking to justify his misstatement by claiming there is another motion to quash that was filed by Plaintiff's prior counsel, which is another false statement.

5

("Shalli") Kumar is the founder of Autotech. Shalli is an engineer who has approximately ten patents. Autotech designs and produces high-tech automated industrial control products. It sells its products to numerous Fortune 500 companies. Virtually all of Autotech's products are manufactured in America. Many of Autotech's domestic competitors have gone out of business in the face of foreign competitors that utilize much cheaper labor to manufacture their products. Much of Autotech's business is dependent on the manner in which it efficiently designs and manufactures circuit boards so that it can be price-competitive with its foreign competitors.

Vikram Kumar is an engineer, having received his engineering degree *summa cum laude*. Vikram resided in Iowa for several years as his wife completed a fellowship at the University of Iowa to become a skin cancer surgeon. Vikram has been the president of Autotech since 2015.

Plaintiff, despite not having more than a few years of formal schooling in Jordan and the United States as she migrated to the United States at the age of 10, was a key employee and consultant of Autotech. Plaintiff was skilled in providing Design For Manufacturing ("DFM") services and had acquired unique skills in building the multi-layer circuit boards utilized by Autotech to the point that Autotech referred to her as a printed circuit board surgeon. In 2014, as Shalli prepared for his planned retirement from Autotech and Vikram was preparing to become the President and CEO of Autotech, Vikram decided to reward Plaintiff for her contributions to the success of Autotech, while at the same time incentivizing Plaintiff to continue to provide her unique skills in DFM and manufacturing of high tech circuit boards. The Kumars helped Plaintiff establish EMS and Vikram as CEO had Autotech enter into a golden handcuff agreement with EMS that he believed fairly compensated Plaintiff for the value of her services as well as incentivizing her to continue providing these services on an exclusive basis .

---

[3] The Autotech-EMS agreement was produced to Defendant over two years ago.

6

Autotech has never been accused of failing to pay any taxes it has owed. Autotech has produced *audited* financial statements for the last 35 years of its existence. The audited financial statements have been used to prepare Autotech's income tax returns. Autotech has always paid the taxes it owed. Neither Autotech, nor to the knowledge of the Kumars, EMS, has ever employed undocumented workers. Autotech was audited years ago, for compliance with employment laws related to foreign born immigrant workers, and the audit confirmed that all employees of Autotech were properly employed by Autotech. EMS followed the same practices in hiring employees as Autotech and has never hired any undocumented workers. The Kumars never did anything to shield themselves or Autotech from tax or employment law liability – they never have done anything that resulted in such liability.

### V. ARGUMENT

Defendant through its counsel laid the foundation for their deception by alleging that various businesses operate under the umbrella of the "Kumar Family Trust" (the "Trust"). Defendant's counsel further alleges that the Kumars are beneficiaries of the Trust. These are blatant misrepresentations. This Trust does not and never did exist, at least as it relates to the Kumars. There are no beneficiaries of a non-existent Trust. If Defendant's counsel does not admit that he simply has fabricated the existence of this Trust, Plaintiff asks that Defendant's counsel be ordered to provide the Court and Plaintiff with any evidence they have that the Trust exists and that it operates in the manner alleged by Defendant.

Defendant and its counsel then alleged that there are several "shell" entities held by the Trust. Defendant's counsel does not identify any such entities because they do not exist. If Defendant's counsel does not admit that he has fabricated the existence of the alleged shell

entities, Plaintiff requests that the Court order Defendant's counsel to provide the Court and Plaintiff with any evidence he has that the Trust or the Kumars have created shell entities.

Based on the fabricated narrative that the Kumars have a Trust that holds shell entities, Defendant's counsel asserts three further misrepresentations. First, Defendant's counsel claims that Plaintiff's corporation, EMS, was formed for the benefit of the Kumars to shield them from liability for "tax, immigration, employment and workplace violations." Defendant's counsel represents that these allegations are based on "evidence produced so far..." [Dkt. #86 p.3]. This is yet another instance of Defendant's counsel fabrications, only this time they are accusing the Kumars of serious federal crimes. Unless Defendant's counsel admits he has fabricated these claims, Plaintiff asks the Court order Defendant's counsel to produce the evidence upon which these assertions are based (and which they have represented to the Court have an evidentiary basis).

Second, Defendant's counsel asserts the false conclusion that Vikram Kumar was "Plaintiff's business partner." The records produced to Defendant establish that Vikram was the corporate president of an entity, Autotech, that entered into a written contract with EMS. If Defendant's counsel does not admit that he fabricated the claim that Vikram was Plaintiff's business partner, Plaintiff asks that the Court order Defendant's counsel to produce the evidence upon which this assertion is based.

Third, Defendant's counsel makes the false assertion that there is a question whether EMS had "real employees." Plaintiff, however, has produced the EMS 941 quarterly filings showing that EMS made payroll tax payments for its employees, and Defendant has further acknowledged that EMS used ADP to process its payroll. (Exhibit A, p.30). Defendant's counsel's argument is not only false, it is nonsensical. Defendant's counsel alleges a plot

whereby EMS had ADP send paychecks directly to individuals who did not exist. EMS paid the payroll taxes for the wages paid to the allegedly non-existent employees. EMS allegedly illegally hired immigrants as employees – never mind the fact that this allegation is inconsistent with the claim that EMS did not actually have employees - yet instead of internally processing payroll it provided information regarding the employees to an unrelated third-party, ADP. Defendant's bizarre theory that EMS paid employees who did not exist, paid taxes on non-existent payrolls and provided ADP with information regarding employees who could not legally work for EMS does not justify the further discovery sought by Defendant.

Defendant's counsel does not limit his misrepresentations to the structure and validity of EMS, choosing instead to use a series of tropes to personally attack Plaintiff. Defendant's counsel inconsistently alleges that Plaintiff does not speak English, but then acknowledges that she is able to speak and understand basic conversational English.[4] Defendant's counsel suggests that Plaintiff, being an immigrant from a foreign country and having little formal education could not have operated EMS. Defendant's counsel refers to Plaintiff as "being incompetent…" and asserts that no documents have been produced which "would justify any salary or executive position." [Dkt. #98 p.2]. Plaintiff requests that the Court order Defendant's counsel to produce all evidence that Plaintiff is incompetent. Moreover, Defendant's counsel's opinion that Plaintiff's compensation was not justified is irrelevant. It is a fact, not an opinion, that Plaintiff earned the compensation set forth in her personal income tax returns that have been produced to Defendant.

---

[4] Defendant's counsel knows that Plaintiff speaks and understands basic conversational English. They have the surveillance tape from the day of the incident in which Plaintiff is seen having numerous conversations with Defendant's employees.

9

Defendant's counsel also makes a series of false statements implying that Plaintiff made demands regarding the interpreter for her deposition for the purpose of delaying the deposition. Defendant's counsel asserted at the status hearing that it is Plaintiff's position that there is only one interpreter in the world who could interpret Plaintiff's deposition. Plaintiff never made this argument. Defendant's counsel also asserted that there was no need for a particular interpreter for Plaintiff's deposition because "there's no such thing as a village dialect." (Exhibit A, p.33). Jordanian Arabic, however, is made up of several varieties of Bedouin Arabic, and Bedouin varieties of Arabic are further divided into Najdi Arabic and Shawi Arabic. (See Exhibit B hereto). Bedouin means "a member of any of the nomadic tribes of Arabia inhabiting the deserts of Arabia, Jordan, and Syria, as well as parts of the Sahara." (See Exhibit C attached hereto). Jordanian Arabic "is replete with city-to-city and village-to-village differences." (See Exhibit D hereto). "[D]aily conversation is conducted in the local colloquial varieties." (*Id.*). "[T]he differences in regional dialects may make one Arabic speaker nearly incomprehensible to another." (See Exhibit _ hereto).

The Court has correctly acknowledged that the most expeditious way to move forward with Plaintiff's continued deposition is to use the same proven interpreter who is also available for the trial. Plaintiff has been advised, however, that the interpreter will be unavailable until July 2ndbecause she is taking a trip to Lebanon. Plaintiff will move forward with her deposition using a different interpreter, if practical and necessary, to avoid the narrative that Plaintiff is seeking to delay her continued deposition.

## VI. THE COURT'S RULING

The Court was apparently persuaded by Defendant's counsel's misrepresentations. The Court asked several questions regarding the need for Defendant to obtain information sought in

its subpoenas. After hearing Defendant's one-sided and false arguments, the Court decided that the legitimacy of Plaintiff's claims was in question. The Court questioned the significant damages claimed by Plaintiff, "particularly given the description of what occurred back on July 9, 2018."[5] (Exhibit A, p.24). The Court also found that "the defendant is entitled to inquire of the plaintiff and/or related individuals that might have information about exactly what this company was, what she did for the company, how many employees it really had, how she got paid..." (*Id.* p.37). The Court immediately followed this finding with the statement that "the alternative to that is if the plaintiff decides not to pursue that claim and states that on the record, then that takes the issue out." (*Id.* pp. 37-38). The Court then stated that "if there's any sort of gamesmanship relating to this issue from the plaintiff's side plaintiff bears the risk that the Court may say that she can't produce – she can't present evidence at trial related to this economic issue because you're entitled to have some discovery related to it. (*Id.* p.39). All of the foregoing statements reflect the Court's skepticism regarding the legitimacy of Plaintiff's case, and that skepticism is a direct result of Defendant's counsel's misstatements.

As Defendant has acknowledged, this is a simple personal injury case. Absent Defendant's counsel's persistent misstatements, there is no reason Plaintiff should be subjected to additional scrutiny beyond that of any other personal injury plaintiff. The Court ultimately determined that Defendant is entitled to subpoena the ADP records to determine if employees were "real." But Defendant's counsel admits that he wants information regarding the employees to do much more. He wants to contact the employees to "confirm that they're real employees, confirm that they have W-2's and tax documents that indicate **they're legally allowed to work in this particular area...**" Plaintiff already has addressed the question of whether EMS had

---

[5] Plaintiff's treating physician, Dr. Andrew Pugely, is one of the preeminent spine surgeons in Iowa. He verifies Plaintiff's injury and symptoms resulting from her fall on July 9, 2018.

"real" employees. Defendant's counsel acknowledges that he intends to contact the former EMS employees and question them regarding their immigration status, without an iota of evidence of any violation of immigration laws and without establishing the relevance of such information. For this reason, Plaintiff requests that the Court grant the pending motions to reconsider the Court's May 16, 2023 order and quash the ADP subpoena. In the alternative, Plaintiff asks that the Court make *an in camera* review of the ADP records and advise the parties as to the Court's determination of whether those records show that there were real employees of EMS, whether ADP directly paid those employees and whether ADP properly reported the earnings of the employees.

Finally, the Court should also quash the subpoena to accountant Bill Barker because the subpoena goes far beyond the income tax records of EMS. The subpoena seeks all information related to the AVG Automation product line of Autotech. Autotech is not a party to this case and is not on trial in this case. It is to be noted that AVG Automation is not a legal entity and Mr. Barker provides no services to the AVG Automation product line. There is nothing in the record before the Court regarding Autotech other than the false musings of Defendant's counsel. Defendant's request for financial information of AVG Automation product line, if construed to be Autotech, is a classic, impermissible fishing expedition which would require the production of a massive amount of confidential, propriety and irrelevant information. As this Court had noted regarding what might be relevant to Plaintiff's economic damage claim: "Financial status records relating to this Electronics Manufacturing Services company which was plaintiff's primary source of employment, business, etc." (*Id* P25 L11-L25), Plaintiff has already supplied all of this information in Schedule C of Plaintiff's federal income tax returns and EMS's quarterly 941 Federal tax returns.

WHEREFORE, Plaintiff respectfully requests that the Court grant the pending motions to reconsider, quash the ADP and Bill Barker subpoenas, and for any further relief which is just.

Respectfully Submitted.

**RAYA NSHEIWAT, Plaintiff**

By:/s/ *Casey C. Kannenberg*

Casey C. Kannenberg
SHARUZI LAW GROUP, LTD
518 17th St. Ste. 270
Denver, CO 80202
Tel: (303) 226-0330
Email: ckannenberg@sharuzilaw.com

Gary P. Hollander (ghollander@agdglaw.com)
Thomas J. Hayes (thayes@agdglaw.com)
Aronberg Goldgehn Davis & Garmisa
330 N. Wabash Ave, Ste 1700
Chicago, Illinois 60611
Telephone: (312) 828-9600
Facsimile: (312) 828-9635

Candy K. Pastrnak
PASTRNAK LAW FIRM, P.C.
313 West Third Street
Davenport, IA 52801
E-mail: ckpastrnak@pastrnak.com

***ATTORNEYS FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

  I hereby certify that on June 2, 2023, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Southern District of Iowa, Davenport Division, using the ECF system which will send notification of such filing to the following:

Jeffrey Michael Marks
ATTORNEY AT LAW,
JEFFREY M. MARKS
5 KILDARE COURT
DEERFIELD, IL 60015
312-606-0400
Fax: 312-585-5538
Email: jeffreymichaelmarks@gmail.com

Benjamin Michael Weston
Alexandra Galbraith
LEDERER WESTON CRAIG PLC
4401 WESTOWN PARKWAY SUITE 212
WEST DES MOINES, IA 50266
515-224-3911
Fax: 515-224-2698
Email: bweston@lwclawyers.com
Email: AGalbraith@lwclawyers.com

Stephen T. Fieweger
STEPHEN T. FIEWEGER, P.C.
5157 UTICA RIDGE ROAD
DAVENPORT, IA 52807
563-424-1982
Fax: 563-424-1983
Email: sfieweger@fiewegerlaw.com

Jonathan Feinstein
JMF LAW LLC
721 MASON LANE
LAKE IN THE HILLS, IL 60156
847-857-8951
Email: feinsteinjonathan@gmail.com

J. Michael Kvetan
Patrick McDonnell
MCDONNELL & ASSOCIATES, PC
860 1ST AVENUE, SUITE 5B
KING OF PRUSSIA, PA 19406
610-337-2087
Fax: 610-337-2575
Email: mkvetan@mcda-law.com
Email: pmcdonnell@mcda-law.com

Anish Parikh
PARIKH LAW GROUP, LLC
150 S. WACKER DRIVE, SUITE 2600
CHICAGO, IL 60606
312-725-3476
Email: anish@plgfirm.com

  I certify under penalty of perjury that the foregoing is true and correct. Executed June 2 2023, in Davenport, Iowa.

Signature: /s/ *Casey C. Kannenberg*