# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## DAVENPORT DIVISION

| | |
|---|---|
| AUTOTECH TECHNOLOGIES, LP, an Illinois Limited Partnerships, and VIKRAM KUMAR, an Individual,<br><br>        *Plaintiffs*,<br><br>v.<br><br>PATRICK J. MCDONNELL, an Individual, and MCDONNELL & ASSOCIATES, P.C., a Pennsylvania Professional Corporation, and WAL-MART, INC.,<br><br>        *Defendants*. | CASE NUMBER: 3:25-CV-00025-RGE-HCA |

### BRIEF IN SUPPORT OF WALMART INC.'S MOTION TO DISMISS THE COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

## TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 1

ARGUMENT ........................................................................................................................ 8

     I.     Motion to Dismiss Standard ............................................................. 8

     II.    Plaintiffs' Claims Are Barred by the Absolute Litigation Privilege.............. 10

         A.    The Absolute Litigation Privilege Bars Plaintiffs' Defamation Claims ............................................................ 10

         B.    The Absolute Litigation Privilege Bars Plaintiffs' False Light Claims ........................................................ 16

     III.   The Complaint Should Be Dismissed with Prejudice................................... 17

CONCLUSION.................................................................................................................... 17

PROOF OF SERVICE ........................................................................................................ 19

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Anderson v. Hartley*
  270 N.W. 460 (Iowa 1936) ................................................. 15

*Asay v. Hallmark Cards, Inc.*
  594 F.2d 692 (8th Cir. 1979) ............................................. 14

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009).......................................................... 9

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)....................................................... 8, 9

*Christopher v. St. Luke's United Methodist Church of Dubuque*
  2025 WL 1322755  (Iowa Ct. App. May 7, 2025).................... 16

*Conforti v. United States*
  74 F.3d 838 (8th Cir. 1996) ............................................... 9

*Dittmer Props., L.P. v. FDIC*
  708 F.3d 1011 (8th Cir. 2013) ...................................... 1, 9, 12

*FTC v. Match Grp., Inc.*
  2022 WL 877107  (N.D. Tex. Mar. 24, 2022)....................... 17

*Golden v. Stein*
  2019 WL 8301702 (S.D. Iowa Dec. 17, 2019) ...................... 16

*Hart v. Comm'r*
  730 F.2d 1206 (8th Cir. 1984) ............................................ 9

*Hintermeister v. Belin McCormick, PC*
  2019 WL 3317365 (Iowa Ct. App. July 24, 2019) ......... 10, 11, 14, 16

*Industrial Steel Constr., Inc. v. Lunda Constr. Co.*
  2020 WL 8225436 (S.D. Iowa Nov. 5, 2020)....................... 15

*Ingram v. Ark. Dep't of Corr.*
  91 F. 4th 924 (8th Cir. 2024) ....................................... 9, 16

*Johnson v. Mott*
  376 F. App'x 641 (8th Cir. 2010) ...................................... 17

*Jones v. Palmer Commc'ns, Inc.*
  440 N.W.2d 884 (Iowa 1989) ...................................... 16, 17

ii

*Kennedy v. Zimmermann*
   601 N.W.2d 61 (Iowa 1999) ...................................................................................... passim

*Leveke v. Hearst Props., Inc.*
   764 F. Supp. 3d 817 (S.D. Iowa 2025) ................................................................................ 9

*McFarland v. McFarland*
   2010 WL 2265681 (N.D. Iowa June 4, 2010).................................................................... 14

*McFarland v. McFarland*
   2010 WL 2899013 (N.D. Iowa July 26, 2010) .................................................................. 14

*McFarland v. McFarland*
   2010 WL 746878 (N.D. Iowa Feb. 26, 2010)...................................................................... 9

*Noble Sys. Corp. v. Alorica Cent., LLC*
   543 F.3d 978 (8th Cir. 2008) .............................................................................................. 9

*Northrup v. Lewis*
   2007 WL 1202691 (Iowa Ct. App. Apr. 25, 2007)...................................................... 13, 14

*Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*
   559 F.3d 772 (8th Cir. 2009) ............................................................................................ 17

*Spencer v. Spencer*
   479 N.W.2d 293 (Iowa 1991) .................................................................................. 9, 10, 16

*Tallman v. Hanssen*
   427 N.W.2d 868 (Iowa 1988) .............................................................................. 13, 14, 15

*White & Johnson, P.C. v. Bayne*
   2003 WL 21696938 (Iowa Ct. App. July 23, 2003) ......................................................... 16

*Wright v. Keokuk Cnty. Health Ctr.*
   399 F. Supp. 2d 938 (S.D. Iowa 2005) ........................................................................ 13, 14

*Yates v. Iowa W. Racing Ass'n*
   2005 WL 2509688 (Iowa Ct. App. Oct. 12, 2005) ...................................................... 10, 14

## Other Authorities

Restatement (Second) of Torts § 586.......................................................................................... 10

Restatement (Second) of Torts § 586 cmt. a............................................................................... 10

Restatement (Second) of Torts § 586 cmt. c ...................................................................... 11, 14

# INTRODUCTION

Under Iowa law, an absolute litigation privilege shields attorneys and their clients from liability based on statements made in court that relate to the litigation. This privilege ensures that attorneys, as "officers of the court," have "the utmost freedom in their efforts to secure justice for their clients." *Kennedy v. Zimmermann*, 601 N.W.2d 61, 64 (Iowa 1999). The claims brought here by Autotech Technologies, LP ("ATLP") and Vikram Kumar are barred by that privilege.

In this action, ATLP and Kumar seek to hold Walmart Inc. liable for statements made by Walmart's attorneys in its defense in *Nsheiwat v. Walmart, Inc.*, No. 3:20-cv-64 (S.D. Iowa). Their defamation and false light claims are, as they allege, based only on statements made at a status conference and in discovery motions. Those statements were, as they allege, used to gain "a litigation advantage." Dkt. 1 ("Compl") ¶ 41. This is a clear case for application of the privilege.

Allowing these claims to proceed based on core protected statements would eviscerate the privilege. It would chill dispute resolution and the legal profession if tort claims such as these could be used to intimidate a party from defending itself. Iowa law does not permit such a result. The Complaint should be dismissed with prejudice.

# BACKGROUND[1]

ATLP and Kumar allege that Walmart's lawyers made false statements about them in court to defend Walmart from a personal injury suit. *See* Compl. ¶¶ 14–15, 22–42. Raya Nsheiwat brought that action, *Nsheiwat v. Walmart, Inc.*, claiming she slipped and fell in the parking lot of a Walmart store. *See id.* ¶ 15. She sought $7 to $9 million in economic damages from Walmart as a result of her injuries. *Nsheiwat*, Dkt. 112 ("Tr.") (May 22, 2023), at 47:7-8; *see also* Compl. ¶¶

---

[1] This background comes from the Complaint, "matters incorporated by reference or integral to the claim, items subject to judicial notice, . . . and exhibits attached to the complaint," all of which are properly before this Court on this motion to dismiss. *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013) (citation omitted).

28, 31 (referencing and quoting from this transcript).

To defend against Nsheiwat's damages claims, Walmart's attorneys filed motions seeking discovery about Nsheiwat's lost income, including about her financial relationship with ATLP and Kumar. As they explain in their Complaint, Nsheiwat was at one time "a key employee of ATLP," which manufactures electronics. Compl. ¶¶ 1, 17. Kumar is its CEO. *Id.* ¶ 16. Nsheiwat later "established her own company known as Electronic Manufacturing Services, LLC ('EMS')." *Id.* ¶ 18. ATLP and EMS then allegedly "entered into an agreement which provided compensation to [Nsheiwat] in exchange for providing . . . expertise and manufacturing services to ATLP." *Id.* ¶ 19.

Walmart's discovery motions, which ATLP and Kumar attach to their Complaint, asserted that Nsheiwat and her accountant, Bill Barker, refused to answer Walmart's requests about her lost income. Dkt. 1-1, Ex. A ("Barker Mot."), at 1–2; Dkt. 1-2, Ex. B ("Mot. to Compel"), at 3–4; *see also* Compl. ¶¶ 23–26. ATLP and Kumar allege that Walmart made false statements in these motions to "gain[] a litigation advantage." Compl. ¶ 41.

The first of these motions, filed on March 13, 2023, sought to compel Barker's compliance with a third-party subpoena. *See* Compl. ¶ 23. The motion stated that Barker was Nsheiwat's accountant, that the "source material for" Nsheiwat's expert reports calculating her damages were her "tax returns," and that Nsheiwat had claimed millions of dollars of "economic losses." Barker Mot. at 2. In further support of the subpoena, the motion explained that Nsheiwat claimed she was supposedly "entitled to such a generous compensation package" because she "purportedly trained and supervised" 30 employees that were staffed at ATLP. *Id.* It also noted that Nsheiwat's expert relied on a statement from her "business partner, Vikram Kumar," "who represented that [she] 'has hired and trained most of [the] manufacturing employees'" at an ATLP plant. *Id.* (quoting

*Nsheiwat*, Dkt. 86-3, at 26). But the motion argued that in fact, "[t]he evidence produced so far suggests that [Nsheiwat] played a passive role; and simply was the nominal head of a shell company to shield AVG from potential liabilities, including tax, immigration, employment, and workplace practices violations." Barker Mot. at 3; *see also* Compl. ¶ 1 (explaining that "ATLP is sometimes also referred to as AVG"). Because Nsheiwat's "tax returns" gave "no real information about her day-to-day responsibilities," Walmart had subpoenaed Barker for "all documents and data reviewed or relied upon to prepare" the returns for Nsheiwat and her businesses. Barker Mot. at 1, 4. After Barker refused to comply, Walmart sought judicial relief. *See id.* at 7–8.

About a week later, Walmart filed a "Motion for Sanctions and to Compel Depositions and Discovery Compliance" against Nsheiwat. Compl. ¶ 25. That motion argued that Plaintiffs' counsel had refused to produce Nsheiwat for a continuation of her deposition, which had "prevented Walmart from adequately responding" to her "economic claims." Mot. to Compel at 1–3. It also stated that Nsheiwat had refused to answer "interrogatories and document requests to substantiate" her supposed "losses due to her inability to run a multi-million-dollar company with over thirty employees." *Id.* at 3, 9. In addition, it explained that Nsheiwat had revoked her HIPAA authorizations and had instead provided legally insufficient authorizations "signed by her attorney-in-fact, Shalabh Kumar," *id.* at 4–5, 9, who founded ATLP, Compl. ¶ 40. Walmart thus asked the Court to compel the deposition, responses to the interrogatories and document requests, and a valid HIPAA authorization. *See* Mot. to Compel at 12–13. In support of its motion, Walmart explained that its "theory [was] that [Nsheiwat's] ownership of EMS and other companies is nothing more than a shell extension of the Kumar family enterprise." *Id.* at 5.

As part of these efforts to obtain discovery about Nsheiwat's claim for lost income, Walmart also served a subpoena on an entity called ADP that provided payroll services to EMS.

*See Nsheiwat*, Dkt. 94, at 1 (Apr. 13, 2023). That subpoena requested "payroll records and employee rosters" for EMS, as well as a deposition. *Id.* In April 2023, EMS moved to quash that subpoena. *Id.*

At a status conference on May 16, 2023, the court addressed Walmart's discovery motions and EMS's motion to quash. *See* Compl. ¶¶ 28–29. The "transcript . . . is available to the public" on the *Nsheiwat* docket, see Dkt. 112, and quoted in the Complaint. Compl. ¶ 31. During the conference, the court stated that "the big issue here" is "about documents and testimony concerning the economic damages that [Nsheiwat] is claiming which are extremely substantial." Tr. at 24:18-21. The court explained that "there's going to have to be discovery on the financial status records and employment records related to [Nsheiwat] and her business and employment with . . . [EMS]." *Id.* at 25:22-25. Counsel for Nsheiwat responded by listing relevant documents that had already been produced and confirming that Nsheiwat would answer questions about her finances at her deposition. *Id.* at 26:9-27:18.

ATLP and Kumar allege that the court then "inquired as to why [Walmart and its attorneys] needed information they sought to subpoena from third parties." Compl. ¶ 29. ATLP and Kumar claim that Walmart's attorneys made "a series of false material misrepresentations" in response "to justify their need to subpoena payroll provider ADP as well as [Nsheiwat's] accountant." *Id.* ¶ 30. Specifically, ATLP and Kumar identify six allegedly false statements that they purport were made during colloquies between Walmart's attorneys and the court at the May 16 conference. Counsel for Walmart allegedly stated:

(1) "[I]t looks like what's happening here is there's Mr. Kumar or whoever is running the main business appears to have set up a separate business to create distance for purposes of–for tax purposes or for employment of people who are from outside the United States." *Id.* ¶

31 (alteration in original); *see also* Tr. 29:4-9.

(2) "The evidence produced so far suggests that Plaintiff played a passive role; and simply was the nominal head of a shell company to shield AVG from potential liabilities, including tax, immigration, employment, and workplace practices violations." Compl. ¶ 31 (alteration omitted).

(3) "So every time we try to get the real issues which is okay, we see you've created these two–this–what we view is kind of a shell company to absorb this liability and perhaps transfer this asset, but you haven't given us anything of substance." *Id.*; *see also* Tr. at 31:19-23.

(4) "We've gotten a lot of documents that tell me that the Kumars have very good lawyers and very good accountants to structure their affairs and at least transfer what we think is a significant liability onto this shell company that if the government had to come in and say why aren't their taxes paid? What about immigration status?" Compl. ¶ 31; *see also* Tr. at 33:12-18.

(5) "But yeah, there's a bunch of shell companies that are set up in there. And I forget off the top of my head what the plaintiff's company is. AVG, I think, is the plaintiff's company." Compl. ¶ 31; *see also* Tr. at 35:7-10.

(6) Nsheiwat did not have "real employees." Compl. ¶ 45; *see also* Tr. at 32:17.

The court ruled on the pending motions at the conference. Relevant here, the court denied EMS's motion to quash the subpoena served on ADP. *See* Tr. at 37:12-14. The court reasoned that "given the economic damages issue," Walmart was "entitled to inquire of [Nsheiwat] and/or related individuals that might have information about what exactly [EMS] was, what she did for the company, how many employees it really had, how she got paid, so that you can check the

5

veracity of her economic damages claims." *Id.* at 37:18-24. The court also granted Walmart's motion to compel Barker to comply with the document subpoena, though the court declined to compel his deposition at that time. *Id.* at 38:6-23.

Following the conference, the court entered an order holding that "Walmart is entitled to discover more information" from ADP and Barker "about Nsheiwat's multi-million-dollar economic damages claim based in significant part on her business, EMS." Dkt. 109 at 2–3 (May 18, 2023). The court explained that Walmart sought information about the "finances" of EMS, "its employees, and the services and training that Nsheiwat provided to the company and its employees." *Id.* at 2. Because the court had ordered the parties to agree on deposition dates, and because Nsheiwat had provided responsive documents about her damages, the court denied as moot the "Motion for Sanctions and to Compel Depositions and Discovery Compliance." *See id.* at 4.

A jury eventually found Walmart not liable for Nsheiwat's injuries. *See Nsheiwat*, Dkt. 569 at 1 (Feb. 13, 2025). The court denied Nsheiwat's motion for a new trial, see *id.*, and her appeal is now pending before the Eighth Circuit, see Dkt. 570; No. 25-1506 (8th Cir.).

The same day that Nsheiwat appealed, ATLP and Kumar filed this case claiming that Walmart and its attorneys made false statements about them in these discovery motions and at the May 16, 2023 conference. *See* Compl. ¶¶ 22–42. They allege that Walmart and its attorneys did so "in order to intimidate [ATLP and Kumar] from telling the truth . . . in support of [Nsheiwat]," "[i]n pursuit of their defense of Walmart," and for "a litigation advantage." *See*, *e.g.*, *id.* ¶¶ 11, 22, 41.

ATLP and Kumar bring defamation and false light claims based on four categories of alleged falsehoods "made in open court and/or in court filings." *Id.* ¶ 42. *First*, they claim that

Walmart falsely stated in the discovery motions and at the May 16 conference that ATLP and Kumar are "engaged in a practice of creating sham shell companies to allegedly shield themselves from liabilities to the government." *Id.* ¶¶ 69, 195, 311–19 (discovery motions); *see also id.* ¶¶ 138, 260, 347–55 (similar allegations regarding conference). *Second*, they allege that Walmart falsely stated in the discovery motions and the conference that ATLP and Kumar are "engaged in running personal expenses through a business constituting tax fraud and creating shell companies to avoid tax liabilities." *Id.* ¶¶ 86, 211, 320–28 (discovery motions); *see also id.* ¶¶ 151, 272, 356–64 (similar allegations regarding conference). *Third*, they allege that Walmart falsely stated in the Barker Motion and the conference that ATLP and Kumar are "engaging in immigration fraud." *Id.* ¶¶ 103, 227, 329–37 (motion); *see also id.* ¶¶ 165, 285, 365–73 (similar allegations regarding conference). *Fourth*, they allege that Defendants falsely stated in the Barker Motion and at the May 16 conference that ATLP and Kumar are "engaging in" "workplace and employment violations." *Id.* ¶¶ 122, 180, 245, 299, 338–46, 374–82.

In addition to the six oral statements listed above, see pp. 4–5, Plaintiffs' claims are based on three allegedly false statements in the discovery motions: (1) a statement in the Barker Motion that "[t]he evidence produced so far suggests that Plaintiff[] played a passive role; and simply was the nominal head of a shell company to shield AVG from potential liabilities, including tax, immigration, employment, and workplace practices violations," *id.* ¶ 24; *see also* Barker Mot. at 3 (2) a statement that Shalabh Kumar was Nsheiwat's "business partner," Compl. ¶ 48; *see also* Barker Mot. at 2; and (3) a statement in the Motion to Compel that "[b]ased on information provided by the Plaintiff to date, Walmart's theory is that the Plaintiff's ownership of EMS and the other companies is nothing more than a shell extension of the Kumar family enterprise," Compl. ¶ 26; *see also* Mot. to Compel at 5.

## ARGUMENT

For decades, Iowa has recognized an absolute litigation privilege for statements made during a judicial proceeding that relate to the proceedings. No defamation claims, false light claims, or other tort claims can be brought based on those statements. No exceptions.

This bedrock principle of Iowa law serves a fundamental purpose for the justice system. The dispute-resolution and truth-seeking functions of the adversary process would be chilled if attorneys or their clients could be sued for statements in court. Lawyers would check their otherwise zealous advocacy. Parties would think twice before testifying. Every word on the record or in filings would be shadowed by the threat of future liability. Iowa has rejected this possibility and decided instead that tort law has no part in regulating the statements of those who appear in court.

ATLP and Kumar's Complaint violates this basic rule. Their defamation and false light claims rest *solely* on statements that, in their own words, "were made in open court" or "court filings." Compl. ¶ 42. These statements are indisputably related to the proceeding in *Nsheiwat*. As ATLP and Kumar themselves allege, the statements were made directly "[i]n pursuit of [Walmart's] defense." *Id.* ¶ 22. That much is clear from the discovery motions attached to the Complaint and the hearing transcript quoted in it. All the statements on which ATLP and Kumar base their claims plainly relate to the damages at issue in the underlying litigation. Iowa law therefore bars Plaintiffs' claims, and this Court should dismiss them with prejudice.

## I.     Motion to Dismiss Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, the complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id*. To state a plausible claim, ATLP and Kumar cannot rely on "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 555, 557). While the Court "accept[s] the factual allegations in the complaint as true and draw[s] all reasonable inferences in [Plaintiffs'] favor," it is not bound to accept "conclusory allegations or legal conclusions drawn from the facts." *Ingram v. Ark. Dep't of Corr.*, 91 F. 4th 924, 927 (8th Cir. 2024) (citations omitted).

A "defense" such as the absolute litigation "privilege" "can provide the basis for dismissal under Rule 12(b)(6)" where it "is apparent on the face of the complaint." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008); *see, e.g.*, *McFarland v. McFarland*, 2010 WL 746878, at *4–*7 (N.D. Iowa Feb. 26, 2010) (granting motion to dismiss on absolute litigation privilege); *Spencer v. Spencer*, 479 N.W.2d 293, 296 (Iowa 1991) (explaining that the absolute litigation privilege in Iowa is a defense). The "face of the complaint" encompasses all "the materials properly before [the Court] on a motion to dismiss," including "public records," "materials embraced by the complaint," *Noble Sys.*, 543 F.3d at 983, "matters incorporated by reference or integral to the claim, items subject to judicial notice, . . . and exhibits attached to the complaint," *Dittmer*, 708 F.3d at 1021 (citation omitted). For example, documents that "were contemplated by or expressly mentioned in the complaint" are properly before the Court in deciding whether to dismiss based on a privilege. *Dittmer*, 708 F.3d at 1021. So are "proceedings in other courts if they relate directly to the matters at issue." *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996) (quoting *Hart v. Comm'r*, 730 F.2d 1206, 1207 n.4 (8th Cir. 1984)); *see, e.g.*, *Leveke v. Hearst Props., Inc.*, 764 F. Supp. 3d 817, 824 n.2 (S.D. Iowa 2025).

## II.    Plaintiffs' Claims Are Barred by the Absolute Litigation Privilege

ATLP and Kumar bring defamation claims and false light claims based on allegedly false statements that Walmart's attorneys made in discovery motions and at a status conference. *See* Compl. ¶¶ 22–42, 67–382. Regardless of how these claims are labeled, they are barred by the absolute litigation privilege and should be dismissed with prejudice.

### A.    The Absolute Litigation Privilege Bars Plaintiffs' Defamation Claims

Under Iowa law, an attorney or party is "absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding," "if it has some relation to the proceeding." *Kennedy*, 601 N.W.2d at 64 (quoting Restatement (Second) of Torts § 586 (1977)); *Spencer*, 479 N.W.2d at 295. This privilege bars "liability in an action for defamation *regardless* of [the attorneys'] purpose in publishing the defamatory matter, their belief in its truth, or even their belief in its falsity."[2] *Kennedy*, 601 N.W.2d at 64 (emphasis added). Its purpose is to "secur[e] to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." *Hintermeister v. Belin McCormick, PC*, 2019 WL 3317365, at *3 (Iowa Ct. App. July 24, 2019) (quoting Restatement (Second) of Torts § 586 cmt. a). The rule thus "encourage[s] the open resolution of disputes by removing the cloud of later civil suits from statements made in judicial proceedings." *Spencer*, 479 N.W.2d at 295.

Whether the absolute litigation privilege applies is a question of law for the court to resolve. *See Yates v. Iowa W. Racing Ass'n*, 2005 WL 2509688, at *3 (Iowa Ct. App. Oct. 12, 2005), *aff'd on other grounds*, 721 N.W.2d 762 (Iowa 2006). As the Iowa Supreme Court has explained,

---

[2] The privilege attaches to the statements at issue, *see Spencer*, 479 N.W.2d at 295–96, so to the extent Walmart could be held responsible for statements made by its attorneys, Iowa law bars claims based on any privileged communications. *See, e.g.*, *Hintermeister v. Belin McCormick, PC*, 2019 WL 3317365, at *3 (Iowa Ct. App. July 24, 2019).

application of the privilege involves "a two-part analysis." *Kennedy*, 601 N.W.2d at 64. First, the court examines the communication "in the context of the occasion to determine if it was made," as relevant here, "during the course and as a part of a judicial proceeding." *Id.* (citation omitted). Second, the court evaluates "the content of the communication . . . to determine if it has some relation to the proceeding." *Id.* (citation and quotation marks omitted). A communication does not even need to "'be strictly relevant to any issue involved in' the litigation" to have "some relation" to the proceedings under that standard. *Hintermeister*, 2019 WL 3317365, at *5 (quoting Restatement (Second) of Torts § 586 cmt. c).

Both elements of the privilege are easily met here. *First*, the communications at issue here were all made in a judicial proceeding. ATLP and Kumar allege as much. As the Complaint states, "[t]he false statements made by the Defendants were made in open court and/or in court filings." Compl. ¶ 42. ATLP's and Kumar's claims are indeed based only on statements identified as having been made in discovery motions filed on March 13 and March 23, 2023, and at a May 16, 2023 status conference. *See*, *e.g.*, *id.* ¶¶ 22–32, 68, 85, 102, 121, 138, 151, 165, 180, 194, 210, 226, 244, 260, 272, 285, 299; *see also id.* ¶ 312 (referring to "the written statements"); *id.* ¶ 321 (same); *id.* ¶ 330 (same); *id.* ¶ 339 (same); *id.* ¶ 348 (referring to "the spoken statements"); *id.* ¶ 357 (same); *id.* ¶ 366 (same); *id.* ¶ 375 (same). Communications such as these "within an actual courtroom proceeding," "pleadings," "affidavits," and "briefs" are all covered by the privilege. *Kennedy*, 601 N.W.2d at 65. The Complaint does not mention, let alone rely on as a basis for liability, any statements made by Walmart or its attorneys out of court.

Second, these communications have far more than just "some relation" to the proceedings in *Nsheiwat*. *Id.* at 64 (citation omitted) As ATLP and Kumar themselves allege, these statements were made "[i]n pursuit of [Walmart's] defense" in that case. Compl. ¶ 22. They claim that the

statements had the "purposes of intimidating potential witnesses in support of [Nsheiwat] and gaining a litigation advantage." *Id.* ¶ 41; *see also id.* ¶ 64 (alleging that Walmart "intended to harm the Plaintiffs and gain an advantage" in *Nsheiwat*). And they explicitly recognize that the statements were part of Walmart's "attempt to advance its defenses." *Id.* at 2.

As the motions attached to the Complaint and the May 16 transcript "expressly mentioned in [it]" show, *Dittmer*, 708 F.3d at 1021; *see also* Compl. ¶ 28, the allegedly defamatory statements all relate to Nsheiwat's damages. Nsheiwat sought millions of dollars in economic damages from Walmart. *See*, *e.g.*, Tr. at 47:7-8. As ATLP and Kumar allege in this case, Nsheiwat received income from a business relationship between her company EMS and ATLP. *See* Compl. ¶¶ 18–19. So, in *Nsheiwat*, Walmart pursued discovery concerning the sources and legitimacy of that income, including through interrogatories, requests for documents, and a deposition, as well as subpoenas to her accountant and payroll company. *See* Barker Mot. 1, 7–8, Mot. to Compel 1–5; Tr. at 37:12-24. Walmart's attorneys argued that this discovery was warranted in part because Nsheiwat's economic damages were linked to her relationship with ATLP and the Kumar family. *See*, *e.g.*, Barker Mot. at 2–8; Mot. to Compel 5, 8–9; Tr. at 29:4-9, 31:19-23, 32:9-21, 33:12-18, 35:7-10 (responding to question from the court about who moved to quash the subpoena served on the payroll company).

Each statement that ATLP and Kumar allege is defamatory concerns the legitimacy of the financial relationships through which they compensated EMS and Nsheiwat. Walmart's attorneys argued that Nsheiwat's lost income was based on her role "train[ing] and supervis[ing]" employees who were staffed at ATLP. Barker Mot. at 2. And in the allegedly defamatory statements, Walmart's attorneys asserted that her company in fact served as a shell to protect ATLP from

various potential "liabilities." Compl. ¶ 24; *id.* ¶ 31 (same).[3] Because each of these statements was made, as ATLP and Kumar acknowledge, "to advance [Walmart's] defenses" against Nsheiwat's claims for lost income, *id.* at 2, each has at least "some relation" to those claims. *Kennedy*, 601 N.W.2d at 64 (citation omitted). Nothing more is needed for the privilege to apply. *See*, *e.g.*, *Tallman v. Hanssen*, 427 N.W.2d 868, 870 (Iowa 1988) (applying privilege to "any defamatory statements contained in [a] brief" filed in a judicial proceeding); *Wright v. Keokuk Cnty. Health Ctr.*, 399 F. Supp. 2d 938, 950–51 (S.D. Iowa 2005) (applying privilege to allegedly slanderous statements made before Unemployment Insurance Appeals Bureau relating to plaintiff's commission of a crime); *Northrup v. Lewis*, 2007 WL 1202691, at *2 (Iowa Ct. App. Apr. 25, 2007) (applying privilege where statements merely "concerned [the] proceedings").

Courts applying Iowa law regularly hold that the absolute litigation privilege bars defamation claims based on statements that bear a similar relation to the proceedings as these. For example, one court in this District concluded that statements about a parent's loan history and belligerent behavior had "some relation" to a divorce proceeding because the statements were submitted "on the issues of child custody and property distribution." *McFarland v. McFarland*,

---

3 *See, e.g.*, *id.* ¶ 26 ("Based on information provided by [Nsheiwat] to date, Walmart's theory is that [Nsheiwat's] ownership of EMS and the other companies is nothing more than a shell extension of the Kumar family enterprise."); *id.* ¶ 31 ("[I]t looks like what's happening here is there's Mr. Kumar or whoever is running the main business appears to have set up a separate business to create distance for purposes of – for tax purposes or for employment of people who are from outside the United States." (alteration in original)); *id.* ("So every time we try to get to the real issues which is okay, we see you've created these two – this – what we view is kind of a shell company to absorb this liability and perhaps transfer this asset, but you haven't given us anything of substance."); *id.* ("We've gotten a lot of documents that tell me that the Kumars have very good lawyers and very good accountants to structure their affairs and at least transfer what we think is a significant liability onto this shell company that if the government had to come in and say why aren't their taxes paid? What about the immigration status?"); *id.* ("But yeah, there's a bunch of shell companies that are set up in there. And I forget off the top of my head what the plaintiff's company is. AVG, I think, is the plaintiff's company."); *id.* ¶ 48 (alleging that Walmart's "claim that Plaintiff Kumar was [Nsheiwat's] business partner was totally false").

2010 WL 2899013, at *2, *9 (N.D. Iowa July 26, 2010); *see*, *e.g.*, *McFarland v. McFarland*, 2010 WL 2265681, at *1, *6 (N.D. Iowa June 4, 2010) (determining that statements about a parent's relationship with a child were related to "issue of appropriate child visitation during the pendency of the [parents'] divorce"); *Yates*, 2005 WL 2509688, at *1, *3–*4 (holding that privilege shielded allegedly defamatory statement by casino attorney that plaintiff's greyhound kennel was "in the bottom two or three . . . in terms of performance" where selection of kennels for booking contracts was at issue in proceeding); *Tallman*, 427 N.W.2d at 870; *Wright*, 399 F. Supp. 2d at 950–51; *Northrup*, 2007 WL 1202691, at *2; *cf. Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 699 (8th Cir. 1979) (holding that privilege did not attach where statements were not "pertinent or relevant" to the "single" legal issue at stake). Likewise, the statements of Walmart's attorneys here have at minimum "some relation" to *Nsheiwat* because they were submitted in support of requests for discovery on economic damages that Nsheiwat put at issue in her personal injury case.[4] There is no reason to depart from these authorities here.

It makes no difference that ATLP and Kumar were not parties to the *Nsheiwat* case, as they repeatedly allege. *See*, *e.g.*, Compl. ¶¶ 79 ("[N]o absolute or qualifying privilege applies to excuse Defendants' conduct as Plaintiffs are not parties in the Walmart matter."), 96, 115, 132, 145, 159,

---

[4] Whether or not the court ultimately relied on the alleged defamatory statements in ruling on the discovery motions is irrelevant. *Cf.* Tr. at 47:1-5 (stating that the court was "not basing" its decisions on the discovery motions "upon the fact that they're arguing it's a shell company. I think they're entitled to the discovery because you put the economic damages issue at play here"). The question is whether the statements had "some relation" to the proceeding, not whether they ended up being material to a request for relief. *Kennedy*, 601 N.W.2d at 64 (citation omitted). Indeed, for a communication to be privileged, it does not even need to be "strictly relevant" to the case. *Hintermeister*, 2019 WL 3317365, at *5 (quoting Restatement (Second) of Torts § 586 cmt. c). For instance, the "fact that the defamatory publication is an unwarranted inference from the evidence is not enough to deprive the attorney of his privilege." Restatement (Second) of Torts § 586 cmt. c. Nor is a statement unprivileged even if it is "in a question to a witness" that the court directs the witness "not to answer." *Id.* Moreover, as explained above, the statements here are plainly related to Walmart's requests for discovery on a central issue in the litigation.

174, 188, 205, 221, 239, 255, 267, 280, 294, 307. No case applying Iowa law has ever refused to apply the privilege on that basis, and such a distinction makes little sense. So long as the statements had "some relation to the proceeding," the privilege protects "zealous advocacy" without regard to whether the speech did or did not concern a party. *Kennedy*, 601 N.W.2d at 64; *Anderson v. Hartley*, 270 N.W. 460, 462 (Iowa 1936) (explaining that a statement may be privileged "although the language used is in reference to a person not a party to the suit"). Otherwise, the privilege would never apply to statements about the targets of third-party discovery or witnesses, as the Plaintiffs here describe themselves. *See*, *e.g.*, Compl. ¶ 41. The absolute privilege ensures that attorneys have complete "freedom in their efforts to secure justice for their clients," not just when speaking about the named parties. *Kennedy*, 601 N.W.2d at 64. Here, because the statements about ATLP and Kumar relate to requests for discovery on the disputed damages at issue in *Nsheiwat*, the privilege applies.

Finally, ATLP and Kumar incorrectly allege that the statements of Walmart's attorneys made in the discovery motions and at the status conference involve "an unprivileged publication . . . to third parties." Compl. ¶ 78; *see, e.g.*, *id.* ¶¶ 11, 22, 73, 90, 95, 109, 114, 131, 141, 144, 154, 158, 169, 173, 183, 187. It is well-established in Iowa that the privilege applies to statements published "within an actual courtroom proceeding," "pleadings," "affidavits," and "briefs"—all of which the public may ordinarily access. *Kennedy*, 601 N.W.2d at 65; *see*, *e.g.*, *Tallman*, 427 N.W.2d at 869 (noting that statements made in open court are privileged); *Industrial Steel Constr., Inc. v. Lunda Constr. Co.*, 2020 WL 8225436, at *7 (S.D. Iowa Nov. 5, 2020) (explaining that "allegations in a judicial complaint fall within the absolute litigation privilege" and refusing to seal the pleading). Although Iowa courts have concluded that the privilege is inapplicable where the communications were *not* made in court and sent *instead* to non-parties without an interest in the

litigation, Plaintiffs do not allege that Walmart or the other Defendants did any such thing. *See Spencer*, 479 N.W.2d at 295–96; *White & Johnson, P.C. v. Bayne*, 2003 WL 21696938, at *4 (Iowa Ct. App. July 23, 2003) Their vague and conclusory references to "publication to third parties" do not plausibly plead that Walmart's attorneys made statements out-of-court to disinterested third parties, if they even intend to allege as much. *See Ingram*, 91 F. 4th at 927. The *only* allegations in the Complaint concern statements made *in court* and in pleadings made *in court*. These statements are absolutely privileged.

### B.    The Absolute Litigation Privilege Bars Plaintiffs' False Light Claims

For the same reasons stated above, the privilege also applies to the false light claims raised in Counts 17 through 24 of the Complaint. It does not matter that those claims are brought as "false light" causes of action. The absolute litigation privilege under Iowa law is not limited to defamation. *See, e.g.*, *Golden v. Stein*, 2019 WL 8301702, at *8–*9 (S.D. Iowa Dec. 17, 2019) (breach of fiduciary duty claim). As one Iowa court recently explained, "[t]he policy considerations motivating the application of the privilege to defamation actions support applying the privilege to other causes of actions based on attorney conduct and statements made in the course of client representation." *Hintermeister*, 2019 WL 3317365, at *4 (applying litigation privilege to claims other than defamation and collecting cases that do the same). This is especially so for a false light cause of action, which is an "overlapping theor[y] of recovery" with defamation "subject to the same constitutional restraints." *Christopher v. St. Luke's United Methodist Church of Dubuque*, 2025 WL 1322755, at *4 (Iowa Ct. App. May 7, 2025) (quoting *Jones v. Palmer Commc'ns, Inc.*, 440 N.W.2d 884, 894 (Iowa 1989), *overruled on other grounds*, *Schlegel v. Ottumwa Courier*, 585 N.W.2d 217 (Iowa 1998)). It would be "unreasonable to allow a party to evade the [constitutional] standards surrounding defamation law because the plaintiff has pled an alternative theory," and the same is true for the absolute litigation privilege. *Jones*, 440 N.W.2d at

894.

The false light claims here are based on the same statements that supported the defamation claims. *See*, *e.g.*, Compl. ¶ 311 (incorporating into false light claim all paragraph on which defamation claims were based); *id.* ¶ 312 (referring only to "the written statements"). Because those statements were made during the *Nshiewat* proceedings and related to Nsheiwat's alleged lost income damages, the privilege bars the false light claims as well. *Kennedy*, 601 N.W.2d at 64.

## III.    The Complaint Should Be Dismissed with Prejudice

Dismissal with prejudice is appropriate when amendment would be futile. *See Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009). ATLP and Kumar have twice before tried to attack Walmart with accusations of misconduct arising from the *Nsheiwat* litigation. They even attached those charges to the Complaint here. *See* Dkt. 1-3 at 3 ("Defendant through its counsel made numerous false and malicious misrepresentations regarding [Nsheiwat] and her business at and leading up to the May 16, 2023 hearing."); Dkt. 1-4 (letter regarding "Defamatory Libelous Conduct Against Shalabh Kumar, Vikram Kumar, and [ATLP]"). But they have *never* identified a *single* unprivileged statement that could conceivably give rise to civil liability. Further amendment would have no purpose other than delay, and the Complaint should therefore be dismissed with prejudice. *See*, *e.g.*, *Johnson v. Mott*, 376 F. App'x 641, 642 (8th Cir. 2010) (affirming dismissal with prejudice of claims barred by limitations defense); *FTC v. Match Grp., Inc.*, 2022 WL 877107, at *6 (N.D. Tex. Mar. 24, 2022) (dismissing with prejudice claims barred by statutory immunity and collecting similar cases).

## CONCLUSION

For those reasons, Plaintiffs' claims against Walmart Inc. should be dismissed with prejudice.

Dated: July 22, 2025                    SUSMAN GODFREY L.L.P.

By: */s/ Robert Rivera, Jr.*
Robert Rivera, Jr. (*pro hac vice*)
Kelley M. Keller (*pro hac vice*)
SUSMAN GODFREY, LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
rrivera@susmangodfrey.com
kkeller@susmangodfrey.com

Jason Bell (*pro hac vice*)
SUSMAN GODFREY, LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
jbell@susmangodfrey.com

Veronica Kirk, AT0009420
Kerrie M. Murphy, AT0005576
MWH LAW GROUP LLP
4350 Westown Parkway, Suite 120
West Des Moines, IA 50266-1090
Telephone: (515) 453-8509
Facsimile: (515) 267-1408
veronica.kirk@mwhlawgroup.com
kerrie.murphy@mwhlawgroup.com

*Attorneys for Walmart Inc.*

## **PROOF OF SERVICE**

I hereby certify that on July 22, 2025, I electronically filed the foregoing with the Clerk of the Court using the electronic document management/electronic filing systems, which will send notification of such filing to the following:

Stephen T. Fieweger

Stephen T. Fieweger
5157 Utica Ridge Road
Davenport, IA 52807
Telephone: (563) 424-1982
Facsimile: (563) 424-1983
sfieweger@fiewegerlaw.com

*Attorney for Plaintiffs*

/s/ Robert Rivera, Jr.
Robert Rivera, Jr.