UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

------------------------------------------------------------- X
                                                                       :

AUTOTECH TECHNOLOGIES, LP, an Illinois      :
Limited Partnership, and VIKRAM KUMAR, an  :       Case No. 3:25-CV-00025-RGE-
Individual,                                    :        HCA
                                                   :
                          Plaintiffs,        :
                                                   :
                    v.                    :
                                                 :

PATRICK J. MCDONNELL, an Individual, and    :
MCDONNELL & ASSOCIATES, P.C., a Pennsylvania  :
Professional Corporation, and WAL-MART INC.,  :
                                                 :
                       Defendants.     :
                                                   :
----------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN RESISTANCE TO
## DEFENDANTS' MOTIONS TO DISMISS

CARTER LEDYARD & MILBURN LLP
  Alan S. Lewis (admitted *pro hac vice*)
  Madelyn K. White (admitted *pro hac vice*)
28 Liberty Street, 41st Floor
New York, NY 10005
Tel:    (917) 533-2524
Email: lewis@clm.com
          white@clm.com


-and-

STEPHEN T. FIEWEGER LAW
  Stephen T. Fieweger
5157 Utica Ridge Road
Davenport, IA 52807
Tel:    (563) 424-1982
Email:  SFieweger@fiewegerlaw.com

*Attorneys for Plaintiffs Autotech Technologies, LP
and Vikram Kumar*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 3

ARGUMENT ............................................................................................................................. 6

    I.     Defendants Did Not Have an Absolute Privilege to Make the Defamatory
           Statements Because Those Statements Are Not Pertinent or Related to Liability
           or Damages in the Slip and Fall Action .......................................................................... 6

    II.    Even if the Court Finds that the Statements Had Some *De Minimis* Relation to
           the Nsheiwat Action, Only a Qualified Privilege Should Apply to Such Statements,
           Given that the Accusations Were Against Non-Parties .................................................. 10

    III.   If There Are Open Questions as to the Type of Privilege to Be Applied, Certification
           Is Necessary ................................................................................................................... 14

CONCLUSION ........................................................................................................................ 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Hartley,*
  270 N.W. 260 (Iowa 1936) ....................................................................................15

*Arizonans for Official English v. Arizona,*
  520 U.S. 43 (1997)................................................................................................15

*Asay v. Hallmark Cards, Inc.,*
  594 F.2d 692 (8th Cir. 1979) ......................................................................6, 7, 8, 11

*Barreca v. Nickolas,*
  683 N.W.2d 111 (Iowa 2004) ................................................................................13

*Brown v. Collins,*
  402 F.2d 209 (D.C. Cir. 1968) .................................................................................6

*Greenlaw v. United States,*
  554 U.S. 237 (2008)................................................................................................3

*Johnston v. Cartwright,*
  355 F.2d 32 (8th Cir. 1966) ....................................................................6, 7, 11, 13

*Kennedy v. Zimmermann,*
  601 N.W.2d 61 (Iowa 1999) ...............................................................10, 11, 12, 15

*Lehman Bros. v. Schein,*
  416 U.S. 386 (1974)..............................................................................................14

*McFarland v. McFarland,*
  2010 U.S. Dist. LEXIS 75573 (N.D. Iowa July 26, 2010) .......................................9

*Mills v. Denny,*
  63 N.W.2d 222 (Iowa 1954) ..................................................................................11

*Peterson v. XPO Logistics, Inc.,*
  812 F. App'x 754 (10th Cir. 2020) .........................................................................13

*Rosenblatt v. Baer,*
  383 U.S. 75 (1966)................................................................................................12

*Spencer v. Spencer,*
  479 N.W.2d 293 (Iowa 1991) ..................................................................................7

**Statutes**

Iowa Code § 684A.1 ............................................................................................................14, 15

**Other Authorities**

Restatement (Second) of Torts § 586 (1977)...............................................................................15

Plaintiffs Autotech Technologies, LP ("ATLP") and Vikram Kumar ("Kumar") respectfully submit this consolidated Memorandum of Law in Resistance to Defendants' Rule 12(b)(6) Motions to Dismiss the Complaint.[1]

## PRELIMINARY STATEMENT

Plaintiffs ATLP and Kumar brought this defamation case because they were falsely accused of illegal and unethical conduct. Plaintiffs have plausibly alleged—and Defendants do not contend otherwise—that the challenged statements are false, defamatory on their face, and were made by Defendants with actual malice. In seeking dismissal, Defendants contend only that the statements are protected by an absolute privilege for statements made in the course of litigation. But as demonstrated below: (a) the statements defaming ATLP and Kumar were not pertinent to nor had any relation to the issues in the lawsuit in which they were made; and (b) ATLP and Kumar were *not* parties in that lawsuit. Therefore, Defendants do not have absolute immunity for the making of their malicious statements and their motions, premised on that flawed notion, must be denied.

The lawsuit in which Plaintiffs were defamed was brought by an individual named Raya Nsheiwat against Walmart. Nsheiwat sought damages for injuries she suffered as a result of a "slip and fall" in the parking lot of one of Walmart's stores (the "Nsheiwat Action"). The simple issues in the Nsheiwat Action consisted of whether (1) Walmart was legally responsible for Nsheiwat's injuries; and (2) if so, the amount of Nsheiwat's recoverable damages.

At the time of the accident, Nsheiwat owned a company which provided business services to ATLP pursuant to a contract between those companies. But the only respect in which

---

[1] The McDonnell Defendants (Patrick J. McDonnell and McDonnell & Associates, P.C.) and Walmart filed separate motions to dismiss. *See* ECF ## 22, 23. Because the grounds raised are identical, Plaintiffs submit a single memo of law in resistance to both motions.

that business relationship was related to the Nsheiwat Action involved the extent to which profits Nsheiwat had generated through that business relationship in the past would be unavailable to her in the future because of the injuries she sustained in Walmart's parking lot and thus available as damages in the Nsheiwat Action. Otherwise, that business relationship had nothing to do with Nsheiwat's personal injury claim *against Walmart*.  Kumar's only connection to Nsheiwat's lawsuit against Walmart was even more remote—he was merely ATLP's CEO. ATLP and Kumar were not parties in the Nsheiwat Action, and there were no third-party subpoenas issued by the parties to ATLP or Kumar.

Nevertheless, during the Nsheiwat Action, Walmart and its lawyers—the McDonnell Defendants in this lawsuit—publicly accused ATLP and Kumar of misconduct.  This happened after Walmart issued a discovery subpoena to an accountant who had provided accounting services to Nsheiwat and her company.  In issuing that subpoena, Walmart did so based on the idea that Nsheiwat's own financial affairs could be relevant to her future earnings and thus to the financial damages resulting from the injuries she suffered in Walmart's parking lot.  But when moving to compel Nsheiwat's accountant to comply with the subpoena, Walmart made statements defamatory of ATLP and Kumar that were irrelevant to the claims and defenses in Nsheiwat's lawsuit. These defamatory statements included the fabricated notion that ATLP had a corrupt relationship with Nsheiwat's company, *i.e.*, that Nsheiwat's company somehow aided ATLP in (non-existent) criminal conduct involving the covering up by ATLP of its own purported labor, tax and immigration law violations.  There can be no question (particularly at the motion to dismiss stage) that these intentionally false allegations denied by Plaintiffs *are* false: these allegations are supported by nothing and instead are flatly contradicted by documentary evidence.

Defendants seek to avoid any responsibility for the harm their tortious conduct caused, claiming a privilege that purportedly immunizes them for making knowingly false and damaging statements about Plaintiffs. As Defendants would have it, parties in a litigation have *carte blanche* to accuse non-parties of criminal and other wrongful conduct with absolutely no basis— *even when those statements are unrelated to issues in the underlying litigation, and even though non-parties cannot seek meaningful redress in the underlying litigation*. As demonstrated below, such an interpretation of the litigation privilege is not remotely consistent with its history and purpose. The policy reason behind the creation of the litigation privilege is that courts presiding over cases in which defamatory statements can remedy such conduct directly. However, because the American legal system is based on the principle of party presentation,[2] courts are poorly equipped to provide remedies to non-parties. Here, Plaintiffs, having no relationship to the Nsheiwat Action, as neither named nor third parties, had no ability to seek a remedy within the Nsheiwat Action. ATLP and Kumar could not, for example, have moved the court in the Nsheiwat Action to impose sanctions on Walmart for its tortious, defamatory statements in that action. Accordingly, ATLP and Kumar availed themselves of their *only* actual opportunity to seek recourse—by commencing this lawsuit for damages suffered as a result of the false and defamatory statements made by Defendants. Consequently, and respectfully, the Court should deny Defendants' motions to dismiss.

## STATEMENT OF FACTS

ATLP is a highly successful business that has operated for over 50 years. It designs and produces high-tech automated industrial control products and sells them to Fortune 500

---

[2] *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("[I]n both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.")

companies.  Compl. ¶ 36.  Its business is largely dependent on its automation products, and the way it efficiently designs and manufactures circuit boards/products and runs its business. It is one of the few companies left that manufacture its products in the United States. Its reputation is extremely important to its success. *Id.*

On July 6, 2020, Nsheiwat brought suit against Walmart to recover for injuries she allegedly suffered in a slip and fall accident in a Walmart parking lot.  *See* Compl. ¶¶ 14, 15. Nsheiwat had once been employed by ATLP, but not at the time of her accident.  *See* Compl. ¶ 17.  Instead, at the time of her accident, Nsheiwat owned her own company, Electronic Manufacturing Services, LLC ("EMS").  *Id.* ¶ 18.  EMS had a contract with ATLP whereby EMS was compensated for providing "expertise and manufacturing services to ATLP."  Compl. ¶ 19.

During the course of the Nsheiwat Action, Walmart sought documents related to EMS's finances and issued a subpoena to Nsheiwat's/EMS's accountant.  After the accountant objected to the subpoena based on relevancy (as well as privilege), Walmart filed a motion to compel compliance with the subpoena.  *See* Compl. Ex. A.  The subpoena sought documents "reviewed or relied upon to prepare Ms. Raya Nshweiwat's [sic] federal and state tax returns for the years 2014 – present, and any returns for the same time period prepared for companies in which she had an ownership interest."  *See id.*  In an addendum, the subpoena also sought documents related to the accountant's services to ATLP.  *See* Compl. Ex. A.

In Walmart's motion to compel, Defendants wrote that Nsheiwat and her companies "played a passive role; and simply was the nominal head of a shell company to shield AVG [ATLP] from potential liabilities, including tax, immigration, employment, and workplace practices violations."  Compl. ¶ 24. In a subsequent public filing, Defendants accused Nsheiwat

and her companies of being "nothing more than a shell extension of the Kumar family enterprise." Compl. ¶ 26. Finally, at a court hearing on Walmart's motion to compel documents related to Nsheiwat and EMS (where neither ATLP nor Kumar appeared or had standing to do so), Defendants stated that "it looks like what's happening here is there's Mr. Kumar or whoever is running the main business appears to have set up a separate business to create distance for purposes of – for tax purposes or for employment of people who are from outside the United States." Compl. ¶ 31. Defendants went on to claim that "the Kumars have very good lawyers and very good accountants to structure their affairs and at least transfer what we think is a significant liability onto this shell company that if the government had to come in and say why aren't their taxes paid? What about the immigration status?" Compl. ¶ 31.

After briefing and hearing on Walmart's Motion to compel, the court denied the requests for "tax forms for any employees (W-2; W-4) and/or 1099 contractors" and "I-9 verification forms for all employees and/or contractors" on the grounds that these documents were "at best tangential to the damages issues and involve private information of persons not involved in this litigation," and further denied the motion insofar as it sought documents related to ATLP on the grounds that the request was "overbroad." *See* Case 3:20-cv-00064, ECF #145 at 7. The court explicitly noted that it found the speculation regarding Nsheiwat's business "distracting and unhelpful," and that those "alleged misrepresentations … did not influence the Court's May 16, 2023 decision, current decision, or any decision in this case." *Id*. at 9.

Plaintiffs, neither of whom were a party to the Nsheiwat Action nor even to the third party litigation surrounding discovery sought from witnesses in that lawsuit, did not (and could not) submit papers in response to statements made about them in Walmart's filings in the

Nsheiwat Action, respond to those statements at the court hearing, or ask for a remedy from the court in which those statements were made.

## ARGUMENT

### I.    Defendants Did Not Have an Absolute Privilege to Make the Defamatory Statements Because Those Statements Are Not Pertinent or Related to Liability or Damages in the Slip and Fall Action

While Iowa recognizes an absolute privilege for statements made during the course of an adversarial proceeding, the privilege does not cover all statements made during litigation. Instead, the privilege is strictly limited to statements that are related to issues in the underlying litigation. *See, e.g., Johnston v. Cartwright*, 355 F.2d 32, 37 (8th Cir. 1966).  Given the nature of the privilege and the protection it affords to known falsehoods, it must be applied and interpreted *narrowly*.  *See Johnston*, 355 F.2d at 36-37; *accord Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698 (8th Cir. 1979) ("special immunity is not lightly conferred … as it protects deliberate lies told with intent to destroy reputation") (quoting *Brown v. Collins,* 402 F.2d 209, 213 (D.C. Cir. 1968)).

Here, the Motions to Dismiss must be denied because the statements that defamed Plaintiffs by falsely alleging their hiring of illegal immigrants and violations of workplace regulations were not pertinent to the issues in the Nsheiwat Action.  Defendants' Motions to Dismiss seek to immunize knowingly false and defamatory accusations by invoking the absolute litigation privilege.  But the law in Iowa is clear: the privilege protects only those statements that are reasonably pertinent or related to the judicial proceeding.[3]  The law does not give litigants and their counsel *carte blanche* to engage in defamatory conduct.

---

[3] Merriam-Webster defines pertinent as "having a clear decisive relevance to the matter in hand."

The Iowa Supreme Court has cautioned that absolute litigation privilege protects *only* those statements that are "reasonably pertinent or ha[ve] some relation to the judicial proceeding." *Spencer v. Spencer*, 479 N.W.2d 293, 295 (Iowa 1991); *accord Johnston*, 355 F.2d at 37 (challenged statements must have "some reference to the subject matter" of the underlying litigation) (quotation omitted).  In *Asay*, the Eighth Circuit applied this principle in reversing a District Court decision granting a motion to dismiss based on the litigation privilege.  The Eighth Circuit noted that "[a] case-by-case evaluation must be made to determine whether the publication fits within the narrow privilege," including an examination of the alleged defamatory statements "to determine if they have some relation to the proceeding."  *Asay*, 594 F.2d at 698-99 (quotation and punctuation omitted).  Applying that standard, the Eighth Circuit held that allegations made regarding "violation of antitrust laws and investigation for illegal campaign contributions do not appear pertinent or relevant to [the] lawsuit for improper termination of [] employment."  *Id.* at 699.  Just as allegations regarding violations of antitrust laws and investigations for illegal campaign contributions are not relevant to a lawsuit for improper termination, allegations of tax fraud, immigration fraud, and violations of workplace safety rules are not relevant to liability or damages in a personal injury lawsuit.  The statements made about ATLP and Kumar, by Defendants in the Nsheiwat Action, had nothing to do with whether Walmart was legally responsible for injuries sustained by Nsheiwat in its parking lot, or the calculation of her damages resulting from those injuries.

In their motions, Defendants fail to explain how their previous allegations of misconduct by ATLP and Kumar involving persons *other than Nsheiwat* were relevant to the Nsheiwat Action.  To be sure, how Nsheiwat's own company generated its earnings could have been relevant to the calculation of Nsheiwat's personal financial damages.  However, the statements

7

made by Defendants baselessly alleging illegal conduct by non-parties ATLP and Kumar (who did not even employ Nsheiwat at the time of her accident) were not even arguably related to the calculation of Nsheiwat's damages.  At best, Defendants could have questioned the corporate structure of the companies in which Nsheiwat herself had an ownership interest, and were entitled to raise questions regarding how and why Nsheiwat and her affiliated companies were earning income and revenue.  However, it is a vast leap to the notion that statements regarding ATLP and Kumar's alleged employment practices *involving persons other than Nsheiwat* were also somehow pertinent and relevant to the amount of Nsheiwat's lost earnings.  *See Asay*, 594 F.2d at 699 (noting that "Asay's allegations regarding Hallmark's violation of antitrust laws and investigation for illegal campaign contributions do not appear pertinent or relevant to his lawsuit for improper termination of his employment").  Indeed, the court in the underlying litigation recognized as much when it denied the subpoena to the extent it sought documents related to ATLP and individual employees, finding the allegations made against ATLP and Kumar to be "distracting and unhelpful," and taking pains to point out that the defamatory allegations "did not influence the Court's May 16, 2023 decision, current decision, or any decision in this case."  *See* Case 3:20-cv-00064, ECF #164 at 9.  Since, as the court found, the "distracting and unhelpful" defamatory allegations were not even relevant to the dispute over non-party discovery in the Nsheiwat Action, those defamatory allegations cannot somehow be understood as pertinent or relevant to the Nsheiwat Action itself.

Even in Defendant McDonnell's formulation, the damages in the Nsheiwat Action were "based on *her business, EMS*."  *See* McDonnell Mem. at 13 (emphasis added).  The damages were not based on ATLP's business.  Relatedly, Walmart argues that the defamatory statements "concern[] the legitimacy of the financial relationships through which [ATLP and Kumar]

compensated EMS and Nsheiwat," and thus were relevant to the Nsheiwat Action.  *See* Walmart

Mem. at 12.  But, as set forth above, the defamatory statements went well beyond questioning

the legitimacy of the "financial relationship" between Plaintiffs and Nsheiwat *and instead*

*accused Plaintiffs of engaging in specific illegal conduct in their internal affairs,* including

allegations of extensive illegal conduct *not involving Nsheiwat*.  Put simply, statements accusing

ATLP of hiring illegal immigrants and engaging in widespread workplace violations had nothing

to do with the reasonable calculation of Nsheiwat's future earnings that she might lose because

of the injuries she sustained in her fall in Walmart's parking lot.

Walmart points to *McFarland v. McFarland*, 2010 U.S. Dist. LEXIS 75573 (N.D. Iowa

July 26, 2010), to contend that the statements at issue in that case had a "similar relation" to the

underlying litigation as the statements here have to the Nsheiwat Action.  *See* Walmart Mem. at

13.  But *McFarland* is readily distinguishable.  In *McFarland*, statements regarding belligerent

behavior by one parent were relevant because custody had yet to be determined.  Similarly,

questions regarding loans and other financial arrangements were relevant to questions regarding

the distribution of property.  *See McFarland*, 2010 U.S. Dist. LEXIS 75573, at *6-7; *30-31.

Here, in contrast, the wild speculation that Plaintiffs violated immigration or employment laws

was completely irrelevant to the questions in the personal injury lawsuit of whether Walmart

caused Nsheiwat's injuries and the amount of Nsheiwat's income loss resulting from her injuries.

Defendants claim that Plaintiffs have conceded that the defamatory statements were

relevant to the Nsheiwat Action because the complaint alleges that the statements were made "in

pursuit of Walmart's defense," or "to advance Walmart's defenses."  *See* Walmart Mem. at 11,

13 (quotation and alterations omitted); *accord* McDonnell Mem. at 15 (arguing that Plaintiffs'

allegations that statements were made "in connection with the Walmart matter" and "to advance

its defenses in the Walmart Matter and to discredit the plaintiff there" purportedly shows that the defamatory statements were connected to the Nsheiwat Action) (citing Compl. at 1). But this is a distortion of what the Complaint alleges. What the Complaint actually alleges is that Defendants engaged in a scorched earth defense strategy in the Nsheiwat Action where they chose to personally attack those perceived to be allied with Nsheiwat, regardless of the relevancy of the accusations to the claims and defenses actually at issue in the Nsheiwat Action. *See* Compl. ¶¶ 22, 41, 64. A party is not free to insert unrelated defamatory falsehoods in a litigation as part of an intimidation tactic towards potential witnesses to try to gain an advantage and then claim that those statements are covered by the litigation privilege. Since the defamatory statements are not pertinent and have no relation to the issues actually raised in the Nsheiwat Action, the absolute litigation privilege does not apply.

II. **Even if the Court Finds that the Statements Had Some *De Minimis* Relation to the Nsheiwat Action, Only a Qualified Privilege Should Apply to Such Statements, Given that the Accusations Were Against Non-Parties**

Defendants should not be allowed to hide behind an absolute litigation privilege because Defendants' defamatory statements at issue were directed at non-parties who, as such, could not pursue a remedy, within the lawsuit in which the defamatory statements were made. In Iowa, the litigation privilege is a judge-made doctrine grounded in policy, and its extent and limit must therefore be consistent with the policy rationale for the creation of the privilege. The policy subordinates the individual right to sue for defamation to the right to participate zealously in a litigation, in recognition of the fact that remedies for defamatory statements made within a proceeding can typically be imposed by the court presiding over such a proceeding, resulting in less of a need for an independent remedy outside of that proceeding. *See Kennedy v. Zimmermann*, 601 N.W.2d 61, 65 (Iowa 1999) (litigation privilege applies when "proceedings are under the able and controlling influence of a learned judge, who may reprimand, fine and

10

punish as well as expunge from records statements of those who exceed proper bounds, and who may themselves be disciplined when necessary"); *accord Asay*, 594 F.2d at 697 ("Iowa law recognizes a *narrow* privilege with respect to certain utterances made in connection with judicial proceedings and emphasizes the presence of judicial control.") (emphasis added); *Mills v. Denny*, 63 N.W.2d 222, 225 (Iowa 1954) (absolute privilege "should be confined to cases where there is supervision and control by other authorities, such as courts of justice").

Courts have cautioned that absolute privileges like the litigation privilege "must be restricted to narrow and well-defined limits." *See Johnston*, 355 F.2d at 36 (quotation omitted). The limits to that privilege should be consistent with the policy reasons for the creation of the privilege. Courts have rationalized closing the courthouse doors to a plaintiff whose reputation was injured during the course of a court proceeding where such a party has other avenues of relief and is therefore not without recourse. As the Iowa Supreme Court Explained in *Kennedy*:

> The rationale for limiting the absolute privilege to judicial proceedings is derived from the same balancing of interests that supports the existence of the privilege. While the paramount reason for granting lawyers a privilege in judicial proceedings is found in the need to protect zealous advocacy, we also recognize there are mechanisms within a judicial proceeding which serve to minimize any intrusion on the interest in a person's reputation which the privilege may create. Thus, while advocacy is preserved, *the interest in a person's reputation is not forgotten*.

601 N.W.2d at 64-65 (emphasis added).

But if Defendants' motions were to carry the day here—where the court to which the defamatory statements were made could not "minimize" harm to the "person's reputation" (because that person was not before the court)—the significant interest Plaintiffs have in their reputations would indeed be entirely cast aside. That is, while this rationale for an absolute privilege makes sense in the context of *a party* whose reputation has been injured by statements made in a case, it does not make sense in the context of statements made about a pure *non-party*.

This is because a non-party who is defamed during a litigation lacks recourse to the mechanisms to protect their reputation within that same litigation, as explained by the *Zimmerman* court. A party or even a third party who is the subject of defamatory statements can complain to the court in which they are made, and ask the court to impose remedies such as the striking of the defamatory statement from the record and the imposition of sanctions on the party who made the statement. By contrast, a non-party cannot seek such sanctions or have documents or statements stricken from the public record of a case in which the non-party has not appeared and lacks standing to do so. Indeed, a non-party might not even be aware of the defamatory statements at the time such statements are made. Thus, to the extent the absolute litigation privilege is applied to foreclose claims by persons who are not parties to the litigations in which they are defamed, a certain group of individuals are left without any recourse to protect their reputations.

This would not be consistent with "balancing of interests"—including the interest a defamed person has in protecting his reputation—that in *Kennedy* the Iowa Supreme Court emphasized for its careful balancing. Nor would that approach be consistent with the constitutional rubric, in which the right of individuals to seek a judicial remedy for reputational injury has a treasured and storied place in our long history. As Supreme Court Justice Potter Stewart aptly observed, "[t]he right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty." *See Rosenblatt v. Baer*, 383 U.S. 75, 92 (1966) (Stewart, J., concurring).

The litigation privilege is absolute and thus when applied it allows a speaker to fabricate complete falsehoods without fear of liability. But the conclusion that the balancing of interests that led to the creation of the absolute privilege should also result in no such absolute privilege in

circumstances like these is also consistent with the important principal that absolute privileges "must be restricted to narrow and well-defined limits." *See Johnston*, 355 F.2d at 36.

Modifying the litigation privilege to be qualified, as opposed to absolute, in the context of statements made regarding non-parties better balances these competing interests. Lawyers, witnesses, and parties in an adversary proceeding are still generally free to engage in zealous advocacy without fear of a later civil suit. Allowing a qualified, as opposed to absolute, privilege simply means that parties and counsel in a litigation are not permitted to utter deliberate or reckless falsehoods regarding a non-party who as such is not present to hear and seek a remedy for its making. A qualified privilege is still a substantial protection for litigants, as it does not even require that an attorney, party, or witness have support for their statements. Instead, all that it requires is that the speaker not have a conscious reason to *doubt* the veracity of their statements but then proceed recklessly to nevertheless make the disparaging statements. *See Barreca v. Nickolas*, 683 N.W.2d 111, 120-21 (Iowa 2004) (adopting "knowing or reckless disregard" for truth or falsity definition of actual malice). Requiring that parties and their counsel not utter statements about non-parties which they know or should know to be false is not an undue burden on zealous advocacy and strikes the appropriate balance between allowing such advocacy and protecting the reputation of non-parties who otherwise would lack recourse to protect their reputations. Indeed, other courts have modified the litigation privilege to make it a qualified rather than absolute privilege in certain circumstances in order to better balance the varying policy considerations. For example, Utah's litigation privilege has been interpreted to include an exception for parties who "committed fraud" or "otherwise acted in bad faith." *See Peterson v. XPO Logistics, Inc.*, 812 F. App'x 754, 758 (10th Cir. 2020).

Here, Plaintiffs were falsely accused of engaging in illegal conduct during the course of a litigation to which they were not parties and during motion practice related to a different non-party. While they ultimately *asked* Defendants to retract those statements and seal any documents containing the defamatory allegations, *see* Compl. ¶ 58, Defendants declined and Plaintiffs had no standing to seek recourse from the court presiding over the Nsheiwat Action. Recognizing a qualified rather than an absolute privilege in these circumstances strikes the appropriate balance between protecting zealous advocacy and preserving an individual's right to protect their reputation.

Should the litigation privilege be applied here as qualified and not absolute, the Complaint easily satisfies the requirement to plead that Defendants made the defamatory statements with actual malice as it alleges that Plaintiffs have never been investigated or suspected of engaging in the illegal conduct for which they were accused, *see* Compl. ¶¶ 38-40, and that the defamatory statements were contradicted by documents which had already been produced in the Nsheiwat Action, *see* Compl. ¶¶ 46, 49, 51. Thus, the Complaint alleges that Defendants made the defamatory statements with, at a minimum, reckless disregard for their truth. *See* Compl. ¶¶ 41, 47-48. Accordingly, Plaintiffs claims should be allowed to proceed.

### III.    If There Are Open Questions as to the Type of Privilege to Be Applied, Certification Is Necessary

While Plaintiffs submit that the above authority regarding the policy behind the litigation privilege is clear that only a qualified privilege should be applied to statements regarding a non-party, if the Court is uncertain, it may and respectfully should certify the question to the Iowa Supreme Court. *See* Iowa Code § 684A.1.

This Court has discretion to certify questions to the Iowa Supreme Court. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). Certification allows state-law questions to be put directly to

the State's highest court, reducing delay, cutting costs, and increasing the likelihood of an authoritative response. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997). Under Iowa law, certification is appropriate where the questions are (1) certified by a proper court; (2) present questions of Iowa law; (3) may be determinative of the underlying action; and (4) there is no controlling precedent. *See* Iowa Code § 684A.1. Here, the first two factors are not in dispute—the parties agree that the litigation privilege is determined by Iowa law. Should the Court disagree that the defamatory statements were unrelated to the Nsheiwat Action, then the scope of the privilege—qualified vs. absolute—is likely to be determinative of this Action. Finally, there is no controlling precedent on point.

    In their motions to dismiss, Defendants argue that the Iowa Supreme Court addressed this issue in a 1936 case—*Anderson v. Hartley*, 270 N.W. 260 (Iowa 1936). *See* McDonnell Mem. at 11; Walmart Mem. at 15. However, not only does *Anderson* appear to have been cited only a handful of times in the almost 100 years since it was decided (and *never* on the question of whether a qualified or absolute privilege should apply to statements regarding non-parties), but it is readily distinguishable. The plaintiff in *Anderson* was the spouse of the plaintiff in the underlying litigation where the defamatory statements were alleged to have been made. *See Anderson*, 270 N.W. at 921-22. Additionally, *Anderson* significantly pre-dates the Restatement (Second) of Torts' definition of the litigation privilege which the Iowa Supreme Court has adopted. *See, e.g., Kennedy*, 601 N.W.2d at 64 (quoting Restatement (Second) of Torts § 586 (1977)). Thus, *Anderson* cannot be said to be controlling precedent barring certification of the issue to the Iowa Supreme Court.

    As set forth above, the question of whether an absolute privilege should bar non-parties such as the Plaintiffs from commencing a lawsuit to recover damages for harm to their

reputations caused by defamatory statements uttered in a litigation to which they were not parties raises significant policy concerns as these non-parties are otherwise without recourse to protect their reputations.  Accordingly, should the Court be inclined to find that an absolute privilege would bar Plaintiffs' claims, it should first certify the question to the Iowa Supreme Court for that Court to rule on this important issue of Iowa law.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motions to dismiss and grant Plaintiffs such other and further relief as the Court deems proper.

Dated:   September 9, 2025
      New York, New York

CARTER LEDYARD & MILBURN LLP

By:       /s/ Alan S. Lewis
      Alan S. Lewis (admitted *pro hac vice*)
      Madelyn K. White (admitted *pro hac vice*)
      28 Liberty Street, 41st Floor
      New York, NY  10005
      Tel:    (917) 533-2524
      Email: lewis@clm.com
          white@clm.com

      -and-

      Stephen T. Fieweger
      STEPHEN T. FIEWEGER LAW
      5157 Utica Ridge Road
      Davenport, IA 52807
      Tel:    (563) 424-1982
      Email: SFieweger@fiewegerlaw.com

      *Attorneys for Plaintiffs Autotech Technologies, LP and Vikram Kumar*

## **PROOF OF SERVICE**

I hereby certify that on September 9, 2025, I electronically filed the foregoing with the Clerk of Court using the electronic document management/electronic filing systems on all counsel of record.


　_/s/ Alan S. Lewis_____
Alan S. Lewis